# EXHIBITS

A   Video Supplement

B   Memos Re: Jose Valenzuela from BOP Correctional Officers / Certificates of Achievement (Representative Sampling)

C   Declaration of Jose Milton Puentes

D   Memorandum of Decision and Order Granting in Part Petitioner's Motion Pursuant to 28 U.S.C. §2255 in Case No. CV-2882-RJK, Filed on December 10, 1998 by United States District Court Judge Robert J. Kelleher

# EXHIBIT A
## VIDEO SUPPLEMENT

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

**UNITED STATES OF AMERICA,**
Plaintiff
v.
**JOSE GUADALUPE VALENZUELA,**
Defendant

**VIDEO SUPPLEMENT**

Case # CR77-1047 (A)- RJK
EXHIBIT A - VIDEO SUPPLEMENT TO
THE DEFENSE RESPONSE BRIEF
DATED DECEMBER 7, 2020

The video may be viewed by
clicking on the following link.

## Jose Valenzuela Video Supplement

https://www.dropbox.com/s/7g1siywdty4m41l/
Jose%20Valenzuela%20Video%20Supplement%20.mp4?dl=0

If any technical difficulty is encountered, please contact:

Law Offices of Matthew J. Lombard.
mlombard@lombardlaw.net
424-371-5930

# EXHIBIT B

MEMOS RE: JOSE VALENZUELA FROM BOP
CORRECTIONAL OFFICERS / CERTIFICATES OF
ACHIEVEMENT (REPRESENTATIVE SAMPLING)



**U. S. DEPARTMENT OF JUSTICE**
FEDERAL BUREAU OF PRISONS
Federal Correctional Institution
Herlong, California 96113

November 16, 2020

MEMORANDUM FOR:     TO WHOM IT MAY CONCERN

FROM:               K. Williams, Correctional officer.

SUBJECT:            Inmate Valenzuela, Jose Reg. No. 19704-148

Mr. Valenzuela is a very respectful and well Behaved Inmate. He
shows a lot of respect towards staff members and other inmates.
I never had any issues with him. He is a very responsible
individual and he's always in good spirit and encourage other to
stay positive. Mr. Valenzuela is also a very well educated man
and a very hard worker. He's always being productive throughout
the day to keep busy. I Believe Mr. Valenzuela is a perfect
example of an inmate who has been rehabilitated and could
function with society from everything he has learned over his
time be inside a prison system.



**U. S. DEPARTMENT OF JUSTICE**
FEDERAL BUREAU OF PRISONS
Federal Correctional Institution
Herlong, California 96113

November 16, 2020

MEMORANDUM FOR:    TO WHOM IT MAY CONCERN

FROM:    T. Munn, Senior Officer Specialist

SUBJECT:    Inmate Valenzuela, Jose Reg. No. 19704-148

Mr. Valenzuela has been housed at FCI Herlong since 1/19/2012. Since then he has been extremely positive and well-mannered towards staff and other inmates. He has spent his time educating himself and others with his practice of religion and personal values. He continues to further help and assist staff as needed without complaint or resistance. He has never received an incident report for negative behavior or actions, and encourages other inmates to practice positive living skills. Mr. Valenzuela keeps in close contact with his family and friends and offers positive encouragement, and sends money to them as he can. He is a prime example of a model inmate, and continues to be without any discouragement from other inmates. I believe that if there were more inmates like Mr. Valenzuela, our prison system would become extremely less violent and more compliant, reducing the amount of injuries and stress for staff and inmates.





## CODE Program
### Certificate of Achievement

This Certifies that

**Jose Valenzuela**

Register # 19704-148

has successfully completed
6 of 6 sessions

## Commitment to Change-Errors in Thinking

This certificate is hereby issued May 30, 2007

V. Buzzanga  Ph.D
CODE Coordinator

P. Powdrill
CODE Treatment Specialist

---

### Certificate of Graduation
for the **CODE** Program
is awarded to

**Jose Valenzuela**

Register No. 19704-148

Congratulations on your completion
of the

### Challenge, Opportunity, Discipline, and Ethics
### Program

P. Powdrill, CODE Treatment Specialist

M. Mattes, CODE Treatment Specialist

Dr. V. Buzzanga Ph.D
CODE Coordinator

May 31, 2007

United States Penitentiary, Beaumont

---

### Certificate of Achievement

This Certifies that

**Jose Valenzuela**

Register # 19704-148

has successfully completed

## Anger Management- Creating New Choices

This certificate is hereby issued October 19, 2006

A. Jaszkowiak, Psy.D
CODE Coordinator

P. Powdrill
CODE Treatment Specialist

---

## CERTIFICATE OF COMPLETION

THIS AWARD IS PRESENTED TO

# VALENZULA

FOR SUCCESSFULLY COMPLETING THE

## YOGA 2

C.CONE RECREATION SPECIALIST  JUNE 2012



*Certificate of Achievement*

This is awarded to

*J. Valenzuela*

For Completion of the Beginning Spanish Crochet Class
U.S.P. Big Sandy
This Certificate is Hereby Issued This 24 Day of June, 2008

*Recreation Specialist*



*CODE Program*
*Certificate of Achievement*

This Certifies that

**Jose Valenzuela**

Register # 19704-148
has successfully completed the

Intensive Phase

This certificate is hereby issued April 20, 2007

V. Buzzunga, Ph.D          P. Powdrill
CODE Coordinator          CODE Treatment Specialist



THE **7** HABITS
of Highly Effective People®

Signature Program

**CERTIFICATE OF COMPLETION**

FranklinCovey is pleased to present

**Jose Valenzuela**

this certificate for successfully completing
The 7 Habits of Highly Effective People
Signature Program.

Stephen R. Covey, Vice-Chairman    Hyrum W. Smith, Co-founder    Facilitator

FranklinCovey



*Certificate of Achievement*

This certifies that

**Jose Valenzuela**

is presented this Certificate of Recognition for

Completion of Thirty Hours in

HEART HEALTHY I

from the

**Recreation Department**

December 18 , 2006
Date

**U.S.P. BEAUMONT**
BEAUMONT, TEXAS

E. Jackson, Recreation Specialist

# EXHIBIT C

## DECLARATION OF JOSE MILTON PUENTES

## DECLARATION OF JOSE MILTON PUENTES

I, Jose Milton Puentes, declare and state the following:

1.     I am a Federal inmate at FCI Herlong, Reg. No. 69025-112. I was transferred to this facility on May 18, 2018. When I arrived, I was in Sierra Bravo unit (S-B) for one week, then moved to Tahoe Bravo unit (T-B) for several months, and then I was moved to the Sierra Charly unit (S-C) on October 10, 2018, where I met Jose G. Valenzuela (Reg. No. 19704-148).

2.     The first thing that impacted me when I met him was the length of time he had been incarcerated (at that time, 41 years), and that his case was non-violent. Also, his lack of any incident reports in recent years, which is rare to find in an inmate.

3.     I notice the age deterioration in his face, his cataracts on the left eye, his skinny pale body, his expressions, reminded me of my dad when he passed away in 2012, he was 83 years old. I have known Mr. Jose G. Valenzuela for 2 years. I walk with him almost every day to chow hall and back to the unit. I have conversations with him about his family, and old stories from his past and what I have noticed in him, that he forgets everything. He constantly tells me the same stories like if he never told them to me before. He forgets the days of the week, the time. He is like a "robot," he eats sometimes, he uses the bathroom, and that's it. That's how my father started with his first stages of dementia. I noticed it right away, just like other people in the unit and in the compound. I noticed it personally because I lived it with my dad for years and it was getting worse due to his aging process that was deteriorating more, to the point that he would forget everything and repeat stories constantly, he could not breathe right.

4.     Since February 5, 2020, I have lived with Mr. Jose Valenzuela, sharing the same cell, and what I can say of seeing him, just like I would see it in my dad, he frequently forgets things, stories that he tells me on and on, he forgets

to breathe at nights, but his body forces him to breathe through his mouth.  He is weak and exhausted, he wakes up constantly, and wakes me up throughout the night.  I have patience with him because I understand what he is going through.  I see it every day, that he is constantly worried, stressed, anxious, he is physically tired of being here, he is moody most of the time complaining of strong headaches on the left side of his head due to chronic sinus inflammations.  I didn't know if he had migraines because of his sinus condition, until I read his medical file, very extensive, and found out he has been suffering since he had that car accident in 1966 and fell off a horse in 1976; an ongoing medical condition that is chronic respiratory due to his sinuses.  The medical records are clear and overwhelming, showing abnormalities on the left side of his head since 1994 up to 2019 receiving care, treatment with different medicine that would not work.

5.    Jose does not eat well.  I have to tell him to eat every day.  He says he is not hungry but my dad was too at the beginning.

6.    I believe Jose has a sister who is older than him in Mexico with that same mental condition but it is at a further stage.  Sometimes at nights I hear him weeping and he does not realize it.  He wakes up and tells me he has some type of eye allergies.  He complains almost every day about burning sensations inside his abdomen, and does not like to take "Ranitidine," since he saw on the news that it provokes cancer (he tells me that almost every day).

7.    I have compassion for the elderly because it reminds me of my dad, and I'm always willing to help out.  So I make the foregoing affidavit in good faith and in support of Mr. Valenzuela's compassionate release.  If it is needed for me to testify in court regarding this matter, I am willing to appear either in person at a

///

///

///

1 │ hearing or through video teleconference.

2 │      I declare under penalty of perjury under the laws of the United States of

3 │ America that the foregoing is true and correct.  Executed this __*16*__ day of

4 │ November, 2020.

5 │

6 │                                    _____

7 │                                    JOSE MILTON PUENTES

8 │

9 │

10 │

11 │

12 │

13 │

14 │

15 │

16 │

17 │

18 │

19 │

20 │

21 │

22 │

23 │

24 │

25 │

26 │

27 │

28 │

                                          3

# EXHIBIT D

MEMORANDUM OF DECISION AND ORDER
GRANTING IN PART PETITIONER'S MOTION
PURSUANT TO 28 U.S.C. §2255 IN CASE NO. CV-
2882-RJK, FILED ON DECEMBER 10, 1998 BY
UNITED STATES DISTRICT COURT JUDGE
ROBERT J. KELLEHER

Reproduced from the holdings of the *National Archives at Riverside*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |  |
|---|---|---|
| JOSE GUADALUPE VALENZUELA, | ) ) ) | NO. CV 97-2882-RJK |
|      Petitioner, | ) ) | |
|      v. | ) ) | MEMORANDUM OF DECISION AND ORDER GRANTING IN PART PETITIONER'S MOTION PURSUANT TO 28 U.S.C. § 2255 |
| UNITED STATES OF AMERICA, | ) ) ) | |
|      Defendant | ) ) ) | |

### I.  BACKGROUND

On December 19, 1977, Petitioner Jose Guadalupe Valenzuela ("Petitioner"), was convicted in this Court of nine narcotics violations: (1) conspiracy to distribute a controlled substance (21 U.S.C. § 846); (2) aiding and abetting two unindicted principals in the trafficking of ten ounces of heroin (21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2); (3) aiding another unindicted principal in the trafficking of six ounces of heroin (§ 841(a)(1) and § 2); (4) aiding and abetting three additional unindicted principals in the trafficking of 2.2 pounds of heroin





1

Reproduced from the holdings of the *National Archives at Riverside*

1  (§ 841(a)(1) and § 2); (5) aiding and abetting three principals

2  in the trafficking of 4.4 pounds of heroin (§ 841(a)(1) and § 2);

3  (6) aiding and abetting four unindicted principals in the

4  trafficking of 44 pounds of heroin (§ 841(a)(1) and § 2); (7)

5  aiding and abetting two unindicted principals in the trafficking

6  of 44 pounds of heroin' (§ 841(a)(1) and § 2); (8) trafficking,

7  along with five co-defendants, of four pounds of heroin (§

8  841(a)(1)); and (9) acting as organizer, supervisor, and manager,

9  with a continuing series of violations, obtaining therefrom

10  substantial income and resources as alleged in Counts 1 through

11  8, in violation of the federal Continuing Criminal Enterprise

12  ("CCE") statute, 21 U.S.C. § 848 ("the CCE Count").

13      Petitioner, appearing pro se, moves, pursuant to 28 U.S.C. §

14  2255, to have his CCE conviction vacated on five grounds: (1) the

15  jury instructions on the CCE count were inadequate and

16  misleading; (2) the court failed to give an instruction that the

17  jurors must unanimously agree on the five persons who were

18  supervised, organized, or managed; (3) the court erred by failing

19  to instruct the jury that they could not rely on Count One, the

20  conspiracy count, as a predicate offense for the CCE violation;

21  (4) the court's instructions to the jury that the CCE statute

22  only requires the government to prove three essential elements

23  was grossly inadequate and erroneous; and (5) the court erred in

24  failing to give an instruction that the jury must unanimously

25  agree as to which alleged violations constituted the continuing

26  series of related violations required for conviction of the

27  continuing criminal enterprise charge. Each of these grounds is

28

2

Reproduced from the holdings of the *National Archives at Riverside*

1   similar in that it stems from the jury instructions given at the

2   end of the trial with respect to the CCE Count. Petitioner

3   raises the additional claim in his Supplemental Citations and

4   Reasons for Immediate Issuance of § 2255 Motion that the

5   testimony of co-defendants should have been suppressed pursuant

6   to the holding in United States v. Singleton, 144 F.3d 1343 (10th

7   Cir. 1998).

8

9                              II.   ANALYSIS

10       A.   Arguments Raised on Direct Appeal

11       The Ninth Circuit has previously rejected Petitioner's

12   claims that the Court's instructions on the CCE count were

13   deficient.   United States v. Valenzuela, 596 F.2d 1361, 1368 (9th

14   Cir. 1979).   To the extent Petitioner's instant arguments are the

15   same as those made on direct appeal, Petitioner is not entitled

16   to have them entertained.   See United States v. Vargas, 455 F.2d

17   501, 501 (9th Cir. 1972) ("The same issue was presented on

18   Vargas' direct appeal and was determined adversely to him.   He is

19   not entitled to a second review of the same question in this

20   section 2255 proceeding.").

21       Although the text of the Ninth Circuit's published opinion

22   sheds little light on the particular jury instruction questions

23   presented in that appeal, a review of Petitioner's original

24   appellate brief is more helpful.

25       In his direct appeal, Petitioner challenged the § 848

26   instructions with respect to the "in concert" requirement, the

27   "series" requirement, and the allowance of Counts One through

28

                                   3

Reproduced from the holdings of the *National Archives at Riverside*

1  Eight to be used a predicate offense for Count Nine.  See Pl.'s
2  Appellate Br. 52-56.  To the extent these arguments are repeated
3  in the instant petition, they are barred by Vargas.

4

5     B.  Arguments Not Raised on Direct Appeal

6     It is well established that a defendant who fails to raise
7  an issue at trial or on direct appeal may not raise the issue in
8  a collateral attack, absent a showing of cause and prejudice.
9  United States v. Frady, 456 U.S. 152, 162-69 (1982); United
10 States v. Johnson, 988 F.2d 941, 945 (9th Cir. 1993) ("If a
11 criminal defendant could have raised a claim of error on direct
12 appeal but nonetheless failed to do so, he must demonstrate both
13 cause excusing his procedural default, and actual prejudice
14 resulting from the claim of error.").  The Supreme Court has
15 stated generally that "cause" exists if "the prisoner can show
16 that some objective factor external to the defense impeded
17 counsel's efforts to comply with the State's procedural rule."
18 Murray v. Carrier, 477 U.S. 478, 488 (1986).  To show prejudice,
19 the petitioner must show that "the constitutional errors raised
20 in the petition actually and substantially disadvantaged his
21 defense so that he was denied fundamental fairness."  Murray v.
22 Carrier, 477 U.S. 478, 494 (1977).

23    Petitioner has failed to show cause for and prejudice
24 resulting from his failure to raise his arguments on direct
25 appeal.  Accordingly, the Court will not address them.

26

27

28

Reproduced from the holdings of the *National Archives at Riverside*

1    C.    Rutledge Applies Retroactively

2        Petitioner argues in light of Rutledge v. United States, 517

3    U.S. 292 (1996), a Supreme Court decision issued subsequent to

4    Petitioner's conviction, Petitioner's CCE conviction must be

5    vacated.   In Rutledge the Supreme Court held a criminal defendant

6    may not be sentenced for both a CCE violation and a § 886

7    conspiracy violation.   Petitioner was sentenced for both.

8        The Government, on the other hand, argues Rutledge cannot be

9    applied retroactively pursuant to the holding in Teague v. Lane,

10   489 U.S. 288 (1989).   Generally, pursuant to Teague, new

11   constitutional rules of criminal procedure are not applicable

12   retroactively in post-conviction collateral proceedings.   Id.

13   The Government contends because Rutledge announced a "new rule"

14   of "constitutional criminal procedure," it may not be applied

15   retroactively to the present § 2255 motion.

16       Whether Rutledge must be applied retroactively appears to be

17   a question of first impression in the Ninth Circuit.   The few

18   published decisions considering the retroactivity of the Rutledge

19   rule have split both in outcome and rationale.   See United States

20   v. Wesson, 1998 WL 30695 (N.D. Ill. 1998) (Rutledge would not

21   apply retroactively on collateral review); United States v.

22   Beverly, 1997 WL 666514 (N.D. Ill. 1997) (Rutledge may be applied

23   retroactively to defendant because it was not a "new rule;" it

24   was clearly dictated by precedent at the time of defendant's

25   conviction); Yu v. United States, 1998 WL 160964 (S.D.N.Y. 1998)

26   (Rutledge is retroactive because it is substantive, not

27   procedural).

28

5

Reproduced from the holdings of the *National Archives at Riverside*

1       The Government argues that pursuant to <u>Bousley v. United</u>

2   <u>States</u>, 118 S. Ct. 1604, 1610 (1998), the <u>Rutledge</u> decision is

3   properly categorized as a rule of constitutional procedure and

4   that <u>Teague</u> applies to bar the retroactive application of the

5   <u>Rutledge</u> decision.   The Government quotes the following passage

6   from <u>Bousley</u> to support its argument:

7       The distinction between substance and procedure is an
    important one in the habeas context.   The <u>Teague</u>

8       doctrine is founded on the notion that one of the
    principal functions of habeas corpus is to assure that

9       no man has been incarcerated under a procedure which
    creates an impermissibly large risk that the innocent

10      will be convicted.   Consequently, unless a new rule of
    criminal procedure is of such a nature that without it

11      the likelihood of an accurate conviction is seriously
    diminished, there is no reason to apply the rule

12      retroactively.   By contrast, decisions of this Court
    holding that a substantive federal criminal statute

13      does not reach certain conduct, like decisions placing
    conduct beyond the power of law-making authority to

14      proscribe, necessarily carry a significant risk that a
    defendant stands convicted of an act that the law does

15      not make criminal.

16

17  <u>Bousley</u>, 118 S. Ct. at 1610 (citations and internal quotes

18  omitted).

19      Set forth elsewhere in the <u>Bousley</u> decision is a precise

20  guideline for the application of <u>Teague</u>.   The Supreme Court

21  concisely states "because <u>Teague</u> by its terms applies only to

22  procedural rules, we think it is inapplicable to the situation in

23  which this Court decides the meaning of a criminal statute

24  enacted by Congress."   <u>Id.</u> at 1610.   Accordingly, the relevant

25  inquiry is whether the Supreme Court in <u>Rutledge</u> "decide[d] the

26  meaning of a criminal statute enacted by Congress."   <u>Id.</u>

27      In <u>Rutledge</u>, the Supreme Court addressed the issue of

28

Reproduced from the holdings of the *National Archives at Riverside*

1  whether a defendant who had been convicted of both conspiracy and

2  CCE had been punished twice for the same offense.  Rutledge, 517

3  U.S. at 297.  The Court began its analysis with the proposition

4  that "Courts may not 'prescrib[e] greater punishment than the

5  legislature intended,'" and found that dual convictions

6  constitute additional punishment pursuant to Ball v. United

7  States, 470 U.S. 856 (1985).  Id.  The Court then applied the

8  statutory construction presumption that "where two statutory

9  provisions proscribe the 'same offense,' a legislature does not

10  intend to impose two punishments for that offense."  Id. citing

11  Whalen v. United States, 445 U.S. 684, 691-692 (1980); Ball, 470

12  U.S. at 861.  The Court then applied the rule set forth in

13  Blockburger v. United States, 284 U.S. 299 (1932) and concluded

14  the defendant had been punished twice for the "same offense"

15  because a conspiracy offense is a lesser included crime of a CCE

16  offense.  Rutledge, 517 U.S. at 300.  Finally, the Court found no

17  reason to depart from the presumption that Congress intended to

18  authorize only one punishment.  Id. at 307.  Accordingly, the

19  Court concluded "'one of petitioner's convictions, as well as its

20  concurrent sentence, is unauthorized punishment for a separate

21  offense' and must be vacated."  Id. quoting Ball, 470 U.S. at

22  864.

23  Because the Supreme Court in Rutledge interpreted criminal

24  statutes enacted by Congress, namely the CCE statute, 21 U.S.C.

25  § 848, and the conspiracy statute, 21 U.S.C. § 846, this Court

26  finds Teague does not apply to bar the retroactive application of

27  Rutledge.  See Bousley, 118 S. Ct. at 1610.

28

7

Reproduced from the holdings of the *National Archives at Riverside*

1   A change in substantive, non-constitutional law is applied
2   retroactively to a defendant who was convicted under the previous
3   law and then brought a section 2255 motion alleging his actual
4   innocence in view of the intervening change in law.  See United
5   States v. McClelland, 941 F.2d 999, 1001 (9th Cir. 1991) citing
6   Davis v. United States, 417 U.S. 222 (1974) (holding a defendant
7   who had been convicted and punished for an act the law did not
8   make criminal was entitled to challenge the conviction).  "[F]ull
9   retroactivity [is] a necessary adjunct to a ruling that a trial
10  court lacked authority to convict or punish a criminal defendant
11  in the first place."  United States v. Johnson, 457 U.S. 537
12  (1982).  "A statute does not mean one thing prior to the Supreme
13  Court's interpretation and something entirely different
14  afterwards. . . . [T]he prior interpretation is, and always was
15  invalid."  Strauss v. United States, 516 F.2d 980, 983 (7th Cir.
16  1975).
17      Here, Petitioner contends that he was convicted based on an
18  erroneous interpretation of a statute made clear by an
19  intervening Supreme Court ruling.  Accordingly, Rutledge compels
20  the conclusion that the conspiracy conviction for violation of 21
21  U.S.C. § 846 is an "'unauthorized punishment for a separate
22  offense' and must be vacated."  Rutledge, 470 U.S. at 864.  Thus,
23  Petitioner's 15-year sentence on Count One must be vacated.
24      However, Petitioner's reliance on Rutledge is misplaced
25  insofar as he seeks to challenge his CCE conviction.  There are
26  two reasons for this.
27      The first is that, despite the Rutledge decision, the
28

                                    8

Reproduced from the holdings of the *National Archives at Riverside*

1   conspiracy underlying the conviction on Count One may properly be
2   used as a predicate offense for the CCE Count.  See United States
3   v. Miller, 116 F.2d 641, 678 (2nd Cir. 1997) (holding, post-
4   Rutledge, that a lesser included § 846 conspiracy may serve as a
5   predicate offense for a § 848 CCE conviction).

6        The second reason is that Petitioner was convicted of seven
7   other narcotics offenses that could serve as predicates to his
8   CCE conviction.

9        Petitioner contends that because six of these convictions
10  were for aiding and abetting and these convictions rely in part
11  on Title 18 instead of Title 21, these convictions cannot be
12  predicates to a CCE conviction.  Petitioner's argument has been
13  squarely rejected in this Circuit.  Section 848 may be applied to
14  one whose criminal conduct consists solely of aiding and abetting
15  the criminal conduct of others, if that person is otherwise a
16  kingpin in his own right, and if the criminal conduct aided or
17  abetted would itself qualify under that section.  United States
18  v. Miskinis, 966 F.2d 1263, 1268 (9th Cir. 1992).  As Petitioner
19  is otherwise a kingpin and the criminal conduct is clearly a
20  proper predicate for a CCE offense, Petitioner's argument is
21  without merit.

22

23       D.   Singleton Does Not Apply

24       Petitioner argues that pursuant to United States v.
25  Singleton, 144 F.3d 1343 (10th Cir. 1998), the testimony of his
26  co-defendants should have been suppressed.  The Court finds that
27  the Singleton decision has been vacated, and therefore, there is

28

                                    9

Reproduced from the holdings of the *National Archives at Riverside*

1  no merit to Petitioner's argument.

2

3                         III.   CONCLUSION

4      For the reasons set forth above, Petitioner's motion is

5  GRANTED IN PART and the conspiracy conviction is VACATED based on

6  Rutledge v. United States, 517 U.S. 292 (1996).   The motion is

7  DENIED in all other respects.

8

9  IT IS SO ORDERED.

10

11  DATED: _____DEC - 9 1998_____        Honorable Robert J. Kelleher

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28